Norris McLaughlin, P.A.
Martha N. Donovan, Esq.
400 Crossing Blvd., 8th Floor
Bridgewater, New Jersey 08807-5933
(908) 722-0700
Direct: (908)252-4240
Email: mndonovan@norris-law.com
Attorneys for Plaintiff, Sun Chemical Corporation

|  |  |  |
|---|---|---|
| SUN CHEMICAL CORPORATION, | : : : | |
| Plaintiff, | : : : | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |
| v. | : : | Civil Action No. 2:20-cv-06252 (SRC-CLW) |
| AMERICAN HOME ASSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; LANDMARK INSURANCE COMPANY; and GREAT AMERICAN ALLIANCE INSURANCE COMPANY (F/K/A AMERICAN ALLIANCE INSURANCE COMPANY), | : : : : : : : : : : | **FIRST AMENDED COMPLAINT** |
| Defendants. | : : : | |

Plaintiff, Sun Chemical Corporation ("Sun Chemical"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment initially brought in the Superior Court of New Jersey, Essex County, pursuant to the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50, et seq. Sun Chemical seeks a determination as to the availability of insurance coverage for environmental claims arising out of and in connection with: (1) the Passaic River (defined below); (2) the Berry's Creek Study Area (defined below); (3) three litigations captioned NJDEP v. Occidental Chemical Corp., et al., Docket No. ESX-L-9868-05 ("State

Court Litigation"), Sequa Corporation v. Sun Chemical Corporation, et al., Docket No. MRS-L-2166-17 ("Sequa Litigation"); and Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al., Docket No. 2:18-cv-11273-JLL/JAD ("Occidental Litigation"); (4) a confidential mediation involving numerous entities, including Sun Chemical with regard to the Lower Passaic River ("Confidential Alter Echo Mediation"); and (5) a confidential mediation involving numerous entities with regard to the Berry's Creek Study Area ("Confidential FTI Mediation"), the foregoing of which include claims which have been asserted both by private parties and governmental authorities (collectively, the "Environmental Claims").

## THE PARTIES

2. Plaintiff, Sun Chemical, is a Delaware corporation which has its principal place of business at 35 Waterview Boulevard, Parsippany, New Jersey 07054.

3. Defendant, American Home Assurance Company ("American Home"), is a New York corporation with its principal place of business at 175 Water Street, New York, New York 10038, and is licensed to do business in New Jersey, and is doing and transacting business in New Jersey. American Home is a member of American International Group, Inc. ("AIG").

4. Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), is a Pennsylvania corporation with its principal place of business at 175 Water Street, New York, New York 10038, and is licensed to do business in New Jersey, and is doing and transacting business in New Jersey. National Union is a member of AIG.

5. Defendant, Landmark Insurance Company ("Landmark"), is a Pennsylvania corporation with its principal place of business at 175 Water Street, New York, New York 10038, and is licensed to do business in New Jersey, and is doing and transacting business in New Jersey. Landmark is a member of AIG.

6. Defendant, Great American Alliance Insurance Company (f/k/a American Alliance Insurance company), (hereinafter "American Alliance") is an Ohio corporation with its principal place of business at 301 E. Fourth Street, Cincinnati, Ohio 45202 and is licensed to do business in New Jersey, and is doing and transacting business in New Jersey.

7. American Home, National Union and Landmark will be referred to hereafter as the "AIG Companies." The policies set forth in paragraphs 14-18 and 20-22 shall be referred to collectively hereafter as the "AIG Policies." The policy set forth in paragraph 19 shall be referred to as the "American Alliance Policy."

## JURISDICTION AND VENUE

8. The subject matter jurisdiction of this Court as invoked on removal by defendant AIG Companies is based on diversity jurisdiction pursuant to 28 USC § 1332(c).

9. This Court has jurisdiction over the AIG Companies and American Alliance because, upon information and belief, the AIG Companies and American Alliance are:

   a. Licensed or authorized to do business in New Jersey; or

   b. have, within the relevant time period, engaged in the business of selling insurance in New Jersey.

10. Venue is proper in this District because the events which resulted in certain of the Environmental Claims (defined above) against Sun Chemical allegedly took place within Essex County, New Jersey.

## FACTUAL BACKGROUND

11. On December 31, 1986, Sun Chemical, pursuant to a written contract, the Asset Purchase Agreement ("APA"), acquired certain assets of the inks and pigments business previously operated by an entity now known as Sequa Corporation ("Sequa").

**The Sun Chemical Sites in Issue**

12. In connection with that acquisition, Sun Chemical continued certain inks and pigments operations at the following locations which Sequa had previously operated and had either owned or leased:

>185 Foundry Street, Newark, New Jersey.
>
>631 Central Avenue, Carlstadt, New Jersey.
>
>390 Central Avenue, East Rutherford, New Jersey.
>
>397 Central Avenue, Carlstadt, New Jersey; and
>
>500 Industrial Avenue, Teterboro, New Jersey.

13. Sun Chemical acquired businesses at the following two additional locations which are implicated in connection with certain of the Environmental Claims:

>343 Murray Hill Parkway, East Rutherford, New Jersey, and
>
>180 East Union Avenue, East Rutherford New Jersey.

**The Sun Chemical Policies in Issue**

14. On December 31, 1986, American Home issued a general liability policy to Sun/DIC Acquisition Corporation, which is the entity that acquired certain inks and pigment assets from Sequa and subsequently changed its name to Sun Chemical Corporation. The American Home policy bearing policy number GLA 1980568 had an inception date of December 31, 1986 and a termination date of August 15, 1987. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental

4

Claims. The per occurrence and aggregate limits for both property damage and contractual liability coverage are one million dollars ($1,000,000).

15. On December 31, 1986, National Union issued a general liability policy to Sun/DIC Acquisition Corporation, which is the entity that acquired certain inks and pigment assets from Sequa and subsequently changed its name to Sun Chemical Corporation. That policy bearing policy number GLA 1980567 had an inception date of December 31, 1986 and a termination date of August 15, 1987. The policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental Claims. The per occurrence and aggregate limits for both property damage and contractual liability coverage are one million dollars ($1,000,000).

16. On December 31, 1986, Landmark issued an umbrella liability policy to Sun/DIC Acquisition Corporation, which is the entity that acquired certain inks and pigment assets from Sequa and subsequently changed its name to Sun Chemical Corporation. That policy bearing number UMB 600-23-79 had an inception date of December 31, 1986 and a termination date of December 31, 1987. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also "liability assumed by the Insured under contract because of …. 'property damage' … as defined herein caused by an occurrence." Endorsement #4 entitled "Pollution Endorsement" does not operate to bar coverage for any of the Environmental Claims. The per occurrence and aggregate limits for both property damage and contractual liability coverage are five million dollars ($5,000,000).

17. On August 15, 1987, National Union issued a general liability policy to Sun Chemical. That policy bearing policy number GLA 430 0984 had an inception date of August 15, 1987 and a termination date of August 15, 1988. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental Claims. The combined single limit for both property damage and contractual liability coverage is one million dollars ($1,000,000).

18. On December 31, 1987, Landmark issued an umbrella liability policy to Sun Chemical. That policy bearing number UMB 600-26-20 had an inception date of December 31, 1987 and a termination date of August 15, 1988. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also "liability assumed by the Insured under contract because of …. 'property damage' … as defined herein caused by an occurrence." Endorsement #4 entitled "Pollution Endorsement" does not operate to bar coverage for any of the Environmental Claims. The per occurrence and aggregate limits for both property damage and contractual liability coverage are five million dollars ($5,000,000).

19. On December 31, 1987, American Alliance issued a following form excess liability policy to Sun Chemical. That policy bearing number FTZ4025829 had an inception date of December 31, 1987 and a termination date of August 15, 1988. That policy attached at ten million dollars ($10,000,000) over the Landmark policy referenced in para. 18 and was a following form policy to the Landmark policy referenced in para. 20. The per occurrence and aggregate limits are five million dollars ($5,000,000).

6

20. On August 15, 1988, National Union issued a general liability policy to Sun Chemical. That policy bearing policy number RMGLA459875 had an inception date of August 15, 1988 and a termination date of August 15, 1989. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental Claims. The combined single limit for both property damage and contractual liability coverage is one million dollars ($1,000,000).

21. On August 15, 1989, National Union issued a general liability policy to Sun Chemical. That policy bearing policy number GL5011680 had an inception date of August 15, 1989 and a termination date of August 15, 1990. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental Claims. The combined single limit for both property damage and contractual liability coverage is two million dollars ($2,000,000).

22. On August 15, 1990, National Union issued a general liability policy to Sun Chemical. That policy bearing policy number GLA5011954 had an inception date of August 15, 1990 and a termination date of August 15, 1991, which upon information and belief, was extended until December 31, 1991. That policy contained a "sudden and accidental" pollution exclusion and provided coverage not only for "property damage," but also, by endorsement, "contractual liability coverage" for all written contracts. The "sudden and accidental" pollution exclusion does not operate to bar coverage for any of the Environmental Claims. The combined

single limit for both property damage and contractual liability coverage is two million dollars ($2,000,000).

23.    Upon information and belief, no policy limits in any of the AIG Policies or the American Alliance Policy discussed in paragraphs 14-22 of this Complaint have been exhausted.

**(1)    The Passaic River Claim**

24.    In 1996, Sun Chemical received an information request from the United States Environmental Protection Agency ("EPA") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9604 (e) in connection with the Passaic River.  Sun Chemical responded to this information request.

25.    In 2006, Sun Chemical received a General Notice Letter from the EPA alleging that Sun Chemical and certain other potentially responsible parties ("PRPs") have CERCLA liability exposure in connection with the Passaic River.  The alleged nexus between Sun Chemical and the Passaic River are post-1986 operations at the 185 Foundry Street, Newark, New Jersey site involving the alleged off-site disposal of contaminants through the collection, transportation and disposal systems owned and operated by third parties.

26.    At no time has Sun Chemical "owned controlled or occupied" any portion of the Passaic River or any of its tributaries.

27.    While denying any and all liability associated with the contamination of the Passaic River and preserving all of its rights and defenses, Sun Chemical has been cooperating with the EPA and other PRPs in connection with investigations and studies necessary to determine the scope and extent of the contamination and the appropriate means to remediate it.

28.    The AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation to defend and indemnify Sun Chemical under the

policies with regard to the Passaic River Claim and to reimburse Sun Chemical for amounts expended in connection with the Passaic River Claim.

**(2)     Berry's Creek Study Area ("BCSA") Claim**

29. In 2002, Sun Chemical received a CERCLA 9604(e) information request relating to the BCSA to which Sun Chemical responded.

30. In March 2006, Sun Chemical received a General Notice Letter from the EPA alleging that Sun Chemical and certain other PRPs have CERCLA liability exposure in connection with the BCSA.  The alleged nexus between Sun Chemical and BCSA involves the alleged off-site disposal of contaminants through collection, transportation and disposal systems owned and operated by third parties.

31. At no time has Sun Chemical "owned controlled or occupied" any portion of Berry's Creek or any of its tributaries.

32. While denying any and all liability associated therewith and preserving all of its rights and defenses, Sun Chemical has been cooperating with the EPA and other PRPs in connection with investigations and studies necessary to determine the scope and extent of the contamination and the appropriate means to remediate the BCSA.

33. The AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy  have an obligation to defend and indemnify Sun Chemical under the policies with regard to the BCSA Claim and to reimburse Sun Chemical for amounts expended in connection with the BCSA.

**(3) Litigations**

**The State Litigation**

34. Sun Chemical was sued as a third-party defendant in the State Litigation which was initiated by the New Jersey Department of Environmental Protection against Occidental Chemical Corporation in 2005.

35. Without any admission of liability, Sun Chemical, together with many other third-party defendants, settled the State Litigation pursuant to a Consent Order in January 2014 for the sum of one-hundred and ninety-five thousand dollars ($195,000).

36. The AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation to defend and indemnify Sun Chemical under the Policies with regard to the State Litigation and to reimburse Sun Chemical for amounts expended in the State Litigation.

**The Sequa Litigation**

37. In October 2017, Sequa filed suit against Sun Chemical. The complaint alleged that, pursuant to the terms of the APA, under which certain inks and pigment assets were sold to Sun Chemical, Sun Chemical was obligated to indemnify, defend, and hold harmless Sequa for certain claims as set forth in that complaint.

38. More specifically, Sequa alleged that, to the extent any discharges of contaminants from the Business Site known as 185 Foundry Street, Newark, New Jersey resulted in contamination to the Passaic River (as alleged by the EPA), Sun Chemical had assumed that liability for Sequa's, as well as Sun Chemical's, operational history at 185 Foundry Street pursuant to the APA. Sequa further alleged that Sun Chemical has the contractual obligation under the APA to address and pay for the investigation and remediation of that contamination on

a going forward basis. Sequa also sought to recoup from Sun Chemical more than $7.5 million in alleged past costs incurred by Sequa in connection with the Passaic River Claim based upon certain indemnification provisions in the APA.

39. Sun Chemical has denied that it assumed any such liability or had any such indemnification obligations pursuant to the APA.

40. The Sequa Litigation settled, with no admissions, via a confidential mediation to which the AIG Carriers were invited to participate, but declined to do so.

41. While denying Sequa's allegations, Sun Chemical avers that the AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation to indemnify Sun Chemical under the policies with regard to the Sequa Litigation and to reimburse Sun Chemical for amounts expended in connection with the Sequa Litigation.

**Occidental Litigation**

42. In July 2018, Occidental Chemical Corporation ("Occidental") filed a complaint in the Federal District Court of New Jersey against numerous defendants, including Sun Chemical, for contribution and cost recovery pursuant to CERCLA §§ 9113 and 9107 in connection with the costs Occidental has and will incur in connection with the investigation and remediation of the Passaic River.

43. While denying any liability to Occidental under CERCLA §§ 9113 and 9107, Sun Chemical avers that the AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation under the policies to defend and indemnity Sun Chemical with regard to the Occidental Litigation and to reimburse Sun Chemical for amounts expended in connection with the Occidental Litigation.

**(4)     Confidential Alter Echo Allocation Process (Passaic River Claim)**

44.     In September 2017, EPA offered 82 General Notice Letter recipients, including Sun Chemical, an opportunity to participate in an allocation process to determine relative shares of responsibility for the Lower Eight Miles of the Passaic River Claim.  EPA chose the allocator, David Batson of Alter Echo, and agreed to fund the allocation effort.  Most of these 82 companies, including Sun Chemical, but excluding Occidental, agreed to participate in this process.

45.     While denying any liability in connection with the Passaic River Claim, Sun Chemical avers that the AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation under the policies to indemnity Sun Chemical with regard to the Confidential Alter Echo Allocation Process and to reimburse Sun Chemical for amounts expended in connection with Confidential Alter Echo Allocation Process (Passaic River Claim).

**(5)     Confidential FTI Allocation Process (BCSA Claim)**

46.     In 2002, Sun Chemical received a CERCLA § 9604(e) information request relating to the BCSA.  In March 2006, Sun Chemical received a General Notice letter from the EPA advising it of its potential liability under CERCLA with respect to the BCSA.

47.     Three of the Sun Chemical sites implicated by the EPA in connection with the BCSA were "Business Sites," a defined term in the APA, transferred from Sequa to Sun Chemical pursuant to the terms of the APA on December 31, 1986.  These properties include 390 Central Avenue, East Rutherford, New Jersey; 500 Industrial Avenue, Teterboro, New Jersey; and 631 Central Avenue, Carlstadt, New Jersey.

48. In addition, on December 31, 1986, Sun Chemical entered into a reciprocal lease agreement and later a lease agreement with Sequa relating to a site located at 397 Central Avenue, East Rutherford, New Jersey. The 397 Central Avenue Site is also implicated by the EPA in connection with the BCSA.

49. In addition to the foregoing, companies later acquired by Sun Chemical also operated the following Sites during the time periods when the Policies were in effect, both of which are part of the BCSA allocation: 343 Murray Hill Parkway, East Rutherford, New Jersey and 180 East Union Avenue, East Rutherford, New Jersey.

50. Sun Chemical is a party to a final confidential allocation process regarding the BCSA Claim being undertaken by FTI, which is slated for completion in 2023.

51. While denying any liability in connection with the BCSA claim, Sun Chemical avers that the AIG Companies under the AIG Policies and American Alliance under the American Alliance Policy have an obligation to defend and indemnity Sun Chemical under the policies with regard to the Confidential FTI Allocation Process and to reimburse Sun Chemical for amounts expended in connection with that Allocation Process.

**Demand for Coverage and Response from AIG Companies and American Alliance**

52. On May 24, 2019, Sun Chemical placed the AIG Companies on notice of the Environmental Claims, other than the State Litigation ("Subset of Environmental Claims"), seeking defense and indemnity pursuant to certain of the AIG Policies.

53. The AIG Companies acknowledged receipt of the notice by letter dated June 14, 2019.

54. Subsequently, on July 12, 2019, the AIG Companies offered a defense under American Home Policy GLA 1980568 and National Union Policy 1980567 for the Subset of

13

Environmental Claims pursuant to a reservation of rights, which included AIG's purported "right" to recoup defense costs from Sun Chemical if it is determined that there is no indemnification obligation. Specifically, AIG stated as follows: "We reserve the right to terminate our participation in the defense should subsequent investigation indicate a reason for doing so, <u>and to seek recoupment of defense costs paid should investigation reveal that there is no coverage</u>." [Emphasis added].

55. No such right of reimbursement appears in any of the AIG Companies' Policies.

56. Sun Chemical did not accept the AIG Companies' proffer of a defense pursuant to this reservation of rights under any of the Policies.

57. On September 9, 2019, the AIG Companies denied defense and indemnity for the Sequa Litigation pursuant to the American Home and National Union policies in effect from December 31, 1986 to August 15, 1987, primarily on the basis of the contractual liability exclusion. This exclusion is inapplicable due to the operation of the contractual liability endorsement which appears on both of these policies, as well as the subsequent policy issued by National Union from August 15, 1987 until August 15, 1988.

58. On February 10, 2020, the AIG Companies repeated its coverage position, set forth in the September 9, 2019 letter for the National Union policy in effect from August 15, 1987 as to that Subset of Environmental claims. The terms of this policy are, in all material respects, identical with the terms of the National Union policy in effect between December 31, 1986 and August 15, 1987.

59. On February 10, 2020, the AIG Companies also denied defense and indemnity for the Subset of Environmental Claims pursuant to Landmark Policy UMB 600-23-79 in effect

14

from December 31, 1986 until December 31, 1987, primarily on the basis of the purported applicability of endorsement 4 entitled "Pollution Endorsement."

60. The AIG Companies have not provided a coverage position on the remainder of the AIG Company Policies included in this First Amended Complaint. The additional primary policies issued by National Union and included in this First Amended Complaint (from 1988 - 1992) are, in all material respects (other than certain policy limits), identical to the National Union policies on which the AIG Companies have provided a coverage position.

61. The AIG Companies have also not provided a coverage position on the additional Landmark policy (from 1987 -1988) included in this First Amended Complaint. However, that policy is, in all material respects, identical to the Landmark policy on which the AIG Companies have provided a coverage position.

62. Prior to filing the original complaint in this matter, Sun Chemical and AIG engaged in discussions concerning the coverage provided for the Subject Environmental Claims under all of the Policies, but with no resolution.

63. On April 21, 2020, Sun Chemical placed Great American Insurance Company on notice of the Subset of Environmental Claims and demanded defense and indemnity. After numerous discussions and exchanges of correspondence/emails, Great American produced the Landmark Policy referenced in Paragraph 18 of this First Amended Complaint and the following form upper layer excess policy referenced in Paragraph 19 of this First Amended Complaint. Specifically that American Alliance policy, endorsement #1, states that: "Coverage provided provided by this policy shall be the same as that provided by the Umbrella policy described in the schedule of Underlying Policies [i.e. the Landmark Policy issued from 8-15-87 to 8-15-88].

64. Since Great American may be bound by the interpretation and application by this Court of Landmark policy language, including Endorsement #4, Great American has been joined as a defendant to this action.

65. Upon information and belief, all remaining policies issued by any of the AIG Companies to Sun Chemical do not contain "sudden and accidental" pollution exclusions as are found in each of the National Union and American Home policies at issue in this First Amended Complaint.

66. Upon information and belief, the only two Landmark policies issued to Sun Chemical are the two AIG Company policies referenced in this First Amended Complaint.

67. Upon information and belief, other than the one policy issued by American Alliance and referenced in this complaint, neither American Alliance nor any of its affiliated Great American insurance companies issued any other insurance policies to Sun Chemical which contained a "sudden and accidental" pollution exclusion, or which followed form over umbrella policies containing Endorsement #4 as found on the Landmark policies at issue herein.

68. Sun Chemical seeks a declaratory judgment that the terms of the AIG Policies and the American Alliance Policy obligate the AIG Companies and American Alliance to defend and indemnify Sun Chemical in connection with all of the Environmental Claims and to reimburse Sun Chemical for amounts expended in connection with all of the Environmental Claims.

**COUNT AGAINST THE AIG COMPANIES AND AMERICAN ALLIANCE**

69. Sun Chemical repeats and realleges the allegations of Paragraphs 1 through 68 of the Complaint as though set forth below in their entirety.

70. Each of the Environmental Claims concerns "property damage" caused by an "occurrence" as defined by the AIG Policies and following form American Alliance Policy and is covered under the policies.

71. None of the pollution exclusions found in any of the AIG Policies or following form American Alliance Policy bars coverage.

72. No other exclusions found on any of the AIG Policies or following form American Alliance Policy bars coverage.

73. The AIG Policies and following form American Alliance Policy expressly provide contractual liability coverage for the claims arising in the Sequa Litigation.

WHEREFORE, Sun Chemical requests a judgment against the AIG Companies and American Alliance as follows:

    A. Declaring that, pursuant to the terms of the policies, the AIG Companies and American Alliance are obligated to defend and indemnity Sun Chemical in connection with the Environmental Claims and to reimburse Sun Chemical for amounts expended in connection therewith.

    B. For reasonable attorneys' fees and the costs and disbursements of this action to the extent provided by N.J. Ct. R. 4:42-8 and R. 4:42-9(a)(6), including interest; and

    C. For such other and further relief as this Court may deem just and proper, including applicable interest.

## REQUEST FOR A JURY TRIAL

Sun Chemical requests a trial by jury as to all issues so triable.

## **DESIGNATION OF TRIAL COUNSEL**

Sun Chemical hereby designates Martha N. Donovan, Esq. as its trial counsel.

                                            Norris McLaughlin, P.A.
                                            Attorneys for Plaintiff,
                                            Sun Chemical Corporation


By: _____
                   Martha N. Donovan

Dated:       October 17, 2022

## **CERTIFICATION PURSUANT TO RULE 4:5-1**

Upon information and belief, the matter in controversy is not the subject of any other action pending in any court, other than the Sequa Litigation and the Occidental Litigation (defined above) which do not involve any insurance related matters, or of a pending arbitration proceeding and no other action or arbitration proceeding is contemplated. At this time, Sun Chemical knows of no additional parties which should be added to this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Martha N. Donovan

Dated: October 17, 2022