Joseph G. Harraka, Jr., Esq. (007731990)
Erik B. Derr, Esq. (145552015)
**BECKER LLC**
354 Eisenhower Pkwy., Ste. 1500
Livingston, NJ 07039
*jgharraka@becker.legal*
*ederr@becker.legal*
Tel: (973) 422-1100
Attorneys for Defendant Great American Alliance Insurance Company

James P. Ruggeri (*pro hac vice* to be filed)
Brittany E. De Vries (*pro hac vice* to be filed)
RUGGERI PARKS WEINBERG LLP
1875 K St., N.W., Ste. 600
Washington, D.C. 20006
*jruggeri@ruggerilaw.com*
*bdevries@ruggerilaw.com*
Tel: (202) 469-7753
Facsimile: (202) 984-1401
Attorneys for Defendant Great American Alliance Insurance Company

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUN CHEMICAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOME ASSURANCE COMPANY, *et al*. <br><br> Defendants. | CASE NO. 2:20-cv-06252 (SRC-CLW) <br><br> MOTION NOTICED FOR DECEMBER 5, 2022 |

## GREAT AMERICAN ALLIANCE INSURANCE COMPANY'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

1

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ......................................................................................... 1

**ARGUMENT** ................................................................................................. 3

    **I.  SUN CHEMICAL HAS FAILED TO ALLEGE A JUSTICIABLE
       CONTROVERSY** ............................................................................. 3

**CONCLUSION** ............................................................................................. 9

# TABLE OF AUTHORITIES

## Cases

*Am. States Ins. Co. v. Component Techs., Inc.*,
420 F. Supp. 2d 373, 376 (M.D. Pa. 2005) ........................................................ 6

*Certain Underwriters at Lloyd, London v. St. Joe Mins. Corp.*,
889 F. Supp. 65 (N.D.N.Y. 1995), *aff'd*, 90 F.3d 671 (2d Cir. 1996) .............. 5

*Currier v. Newport Lodge No. 1236,*, No. 21-CV-00667-JL,
2022 WL 279639 (D.N.H. Jan. 31, 2022) ........................................................ 5

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*,
623 A.2d 1133, 1137 (Del.Super.Ct.1992) ...................................................... 6

*Iolab Corp. v. Seaboard Sur. Co.*,
15 F.3d 1500, 1505 (9th Cir. 1994) ................................................................. 6

*Owens-Illinois, Inc. v. United Ins. Co.*,
138 N.J. 437 (1994) ......................................................................................... 7

*Raytheon Co. v. Cont'l Cas. Co.*,
123 F. Supp. 2d 22, 30–31 (D. Mass. 2000) .................................................... 6

*Safety Nat. Cas. Corp. v. Am. Special Risk Ins. Co.*,
99 F. App'x 41, 43 (6th Cir. 2004) .................................................................. 6

*St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin
 Islands*,
218 F.3d 232, 240 (3d Cir. 2000) .................................................................... 4

*Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 4:01-CV-
 157,
2005 WL 1610663, (W.D. Mich. July 1, 2005) ............................................... 6

*UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*,
647 A.2d 182, 189–90 (Law. Div. 1994) ......................................................... 5

**Rules**

Federal Rules of Civil Procedure 12(b)(1) and 12(e) ...................................... 1

Fed. R. Civil P. 11 ........................................................................................... 2

**Constitutional Provisions**

Article III of the U.S. Constitution .............................................................. 1, 2

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(e), Great American Alliance Insurance Company ("Great American"), by counsel, respectfully requests the Court dismiss this action because Sun Chemical Corporation ("Sun Chemical") has failed to allege a justiciable claim against Great American.

## INTRODUCTION

Great American moves to dismiss the Plaintiff's First Amended Complaint because the pleading alleges no justiciable case or controversy between Great American and Sun Chemical, as required by Article III of the U.S. Constitution.  Sun Chemical seeks coverage from Great American under a single upper-layer excess policy that attaches excess of at least $15 million, *i.e.*, only after $15 million in loss is properly allocated to the Great American policy period (December 31, 1987 to August 15, 1988).  According to the complaint, Sun Chemical seeks coverage under policies in effect from December 31, 1986 to August 15, 1990.  As a result, even if those are the only periods implicated by the environmental claims, it is possible, if not likely, that the loss incurred by Sun Chemical would have to be $60 million or more to reach the attachment point of the Great American policy under New Jersey's applicable pro rata allocation rules.  There is no allegation in the Complaint that Sun Chemical's loss will potentially reach the Great American policy.  In

1

fact, the only alleged amount that Sun Chemical has paid to date is $195,000 pursuant to a consent order entered in January 2014 with the NJ Department of Environmental Protection ("State Litigation").   And, according to the complaint allegations, the only reason Great American is named a defendant is because it follows form to an underlying Landmark policy and, therefore, Sun Chemical alleges, Great American "may" be bound by the interpretation of the Landmark policy.

That allegation—that Great American may be bound—does not plead a case or controversy under Article III.  Whether Great American may be bound by this Court's interpretation of the Landmark policy is an issue that should be decided by the court adjudicating any disputes between Sun Chemical and Great American only if and when a justiciable case or controversy arises.  This Court, in the absence of a pleaded actual case or controversy, should not decide that issue.   And, not only does the Constitution counsel against it, so do prudential concerns, such as the reality that, if Great American is not dismissed, then it will be forced to incur significant costs participating in a litigation as to which it has no real stake, other than—according to the Complaint—an academic one on how an underlying policy issued by a different company may be interpreted.

If Sun Chemical, in good faith and after an inquiry reasonable under the circumstances as required by Rule 11, believes that the Great American policy will be implicated, then the Court should grant Sun Chemical leave to amend its First Amended Complaint to plead its claim against Great American with facts sufficient to support jurisdiction, including the amounts Sun Chemical expects to incur in the underlying actions, how those amounts will be allocated across the different policy periods, and why Sun Chemical expects, following an inquiry reasonable under the circumstances, that they will reach Great American's attachment point.

## **ARGUMENT**

## I.     **SUN CHEMICAL HAS FAILED TO ALLEGE A JUSTICIABLE CONTROVERSY**

The Third Circuit has explained that, even in a declaratory judgment action, a plaintiff must present a justiciable controversy – that is, a ripe dispute, not a hypothetical question about contingent rights:

> A declaratory judgment or injunction can issue only when the constitutional standing requirements of a "case" or "controversy" are met.  Although declaratory judgments are frequently sought in advance of the full harm expected, they must still present a justiciable controversy rather than abstract, hypothetical or contingent questions.  We have explained that these standing requirements are satisfied when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

3

*St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000).

An insured's claims against excess insurers raise serious questions of justiciability. An excess insurer, by definition, has no obligation until a specified amount of underlying coverage is exhausted. Unless there is reason to believe that the underlying coverage is insufficient to cover the claim, courts have not hesitated to dismiss claims against excess insurers as non-justiciable. In one illustrative case, a New Jersey court dismissed a claim against an excess insurer when it saw no likelihood that the underlying claim would reach the excess level:

> In the present case, Old Republic's policy provides that it is liable "only after the underlying umbrella insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability...." The underlying umbrella liability is $50 million. Old Republic argues that based on plaintiff's stated damage claim of $25 million, it is likely that its policy will never be reached; thus, there is no real controversy. I agree. In their insurance contract, the parties clearly contemplated that Old Republic would make no payment until the first $50 million is paid by underlying policies.
>
> Plaintiff's claim that its damage estimate involves projected costs and that substantial claims may arise in the future is based on prospective, uncertain or contingent events. . . . [T]here is nothing in the present record that would justify the conclusions that the underlying insurance is insufficient. Indeed, more than double what plaintiff seeks must be paid before Old Republic's policy is implicated.

4

*UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co.*, 647 A.2d 182, 189–90 (Law. Div. 1994).

Most other courts have taken a similar approach. In *Certain Underwriters at Lloyd, London v. St. Joe Mins. Corp.*, 889 F. Supp. 65 (N.D.N.Y. 1995), *aff'd*, 90 F.3d 671 (2d Cir. 1996), the court, applying Second Circuit precedent, determined that a mere possibility that an excess carrier would be reached was insufficient to create a justiciable question; it was necessary to show a "practical likelihood." *Id.* at 67. In determining that likelihood, the court was not bound by worst-case estimates, but could take into account such factors as the insured's defense on the merits, the likelihood that liability for environmental damage would be shared by other defendants. The Second Circuit agreed and affirmed. 90 F.3d at 675.

Courts outside the Second Circuit have adopted the "practical likelihood" test. *See Currier v. Newport Lodge No. 1236,*, No. 21-CV-00667-JL, 2022 WL 279639, at *7 (D.N.H. Jan. 31, 2022) (dismissed claim where "the range of potential damages in the underlying tort case is uncertain at best, and the plaintiffs have not plead facts showing there is a "practical likelihood" that a verdict or settlement in the tort case will ever reach the excess insurance policies at issue in this case"). Courts elsewhere, including those in the Third

Circuit, may not necessarily use the term "practical likelihood," but they apply essentially the same standard.[1]

Requiring a practical likelihood of reaching the excess insurer's policies spares the parties from needless litigation costs. As the Ninth Circuit put it in a similar case, "requiring the excess insurers to defend against [the insured's] claim would impose on the excess insurers the unnecessary cost of litigating a claim that may never trigger excess coverage." *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1505 (9th Cir. 1994).

Here, Sun Chemical does not allege that Great American has breached any duty or indeed that it has any duty. Its sole claim is for a declaratory judgment concerning the parties' right and duties if the Great American policy

---

[1] *See Safety Nat. Cas. Corp. v. Am. Special Risk Ins. Co.*, 99 F. App'x 41, 43 (6th Cir. 2004) (affirming dismissal of insured's coverage claim where "any judgment against [the insured] would likely not exceed the insurance limits and therefore "any assessment of [the insurer's] obligations would likely be advisory"); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30–31 (D. Mass. 2000) (plaintiff must show a 'reasonable likelihood that the claims will mature as to that defendant") (quoting *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1133, 1137 (Del.Super.Ct.1992); *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 4:01-CV-157, 2005 WL 1610663, at *10 (W.D. Mich. July 1, 2005) (finding no justiciable claim and declining to "speculate on whether additional claims will ever be asserted and whether Stryker will ever exceed the self-insured retention amounts"); *Am. States Ins. Co. v. Component Techs., Inc.*, 420 F. Supp. 2d 373, 376 (M.D. Pa. 2005) (finding that "the present controversy is not sufficiently definite or concrete to be justiciable" where "Plaintiff seeks a declaration of its duty to indemnify Defendants for liabilities they may never incur").

should be reached.  But nothing in Sun Chemical's complaint suggests any possibility – let alone a "practical likelihood" – that the Great American policy will *ever* be reached.  As Sun Chemical acknowledges, that policy, in effect from December 31, 1987 to August 15, 1988, attaches excess of $15 million over the Landmark UMB 600-26-20 policy.  Complaint ¶ 19.  Sun Chemical seeks coverage not only from Great American but also under a number of policies in effect from December 31, 1986 to August 15, 1990, a period of nearly four years.  Environmental claims such as those for which Sun Chemical seeks coverage here typically develop over a period of years, triggering multiple policies over which liability is allocated.  *See Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437 (1994).  If those claims are covered, then it is likely there will be at least four years' worth of coverage available, totaling $60 million or more, before Great American could become obligated to pay.  For Sun Chemical to state a justiciable claim, therefore, it must show a reasonable likelihood that it will incur tens of millions in loss from the underlying claims.

But the only expense specified in the Complaint is the $195,000 Sun Chemical paid more than eight years ago in the underlying State Litigation.  So far as it appears from the Complaint, all of Sun Chemical's liability in that case was discharged by that payment – which represents less than one-half of one

percent of the expenses Sun Chemical would have to incur to reach the Great American policy.

Sun Chemical alleges that, in the underlying litigation filed by Sequa Corporation, Sequa *sought* $7.5 million from it.  That litigation has settled for an undisclosed amount but without some affirmative statement by Sun Chemical the Court should not presume that it exceeds at least the $15 million limits of coverage directly underlying the Great American policy.

For the other three underlying claims for which it seeks coverage, Sun Chemical provides no indication at all of its potential exposure.  One of these claims, the one filed by Occidental Chemical Company, names some 120 defendants, which suggests that Sun Chemical's share of liability, if any, is likely to be small.  The other two claims do not relate to litigation, but rather to notice letters from the U.S. Environmental Protection Agency identifying Sun Chemical as one of multiple potentially responsible parties at a site.  These notice letters date back more than 15 years, which presumably has given Sun Chemical sufficient time to estimate its exposure, but the Complaint provides no indication of what it might be.

The only reason Sun Chemical provides for making its speculative claim against Great American is another speculation:  that Great American "may be bound" by a judgment against an underlying carrier.  But that issue should be

8

addressed when and if Sun Chemical is able to state a justiciable claim – one in which it can show that there is a reasonable likelihood that the Great American policy may be reached.  At present, the proper course is for the Court to dismiss the claims against Great American without prejudice and to grant Sun Chemical leave to amend to state a justiciable claim, if it can.

## **CONCLUSION**

For the foregoing reasons, Great American respectfully requests that the Court dismiss the Plaintiff's First Amended Complaint as to all counts against this Defendant without prejudice, or, alternatively, the Plaintiff be required to identify a more definite statement in which it pleads facts indicating a reasonable likelihood that Great American's policy is implicated in this action.

Respectfully submitted,

*/s/ Joseph G. Harraka, Jr.*
Joseph G. Harraka, Jr.
BECKER LLC

*/s/ James P. Ruggeri*
James P. Ruggeri
RUGGERI PARKS WEINBERG LLP

Attorneys for Defendant Great American Alliance Insurance Company

Dated: November 10, 2022

9